Good morning, Your Honor. Barry Morris appearing on behalf of Appellant. I'm going to focus my argument today. I'm going to need you to speak up. Oh, okay. Into the mic. Into the mic and speak clearly and loudly, please. Yes, Your Honor. The clock is counting down. I know. I'm going to address the commerce clerks issue principally. If the Court has questions about any of the other issues, naturally I'll be prepared to answer them. But the real issue in this case is whether or not a statute that was clearly designed to deal with importation of women under slavery-type conditions into state transportation of those women, frequently for prostitution purposes but not exclusively, whether that can be applied to a purely local street-corner prostitution act, simply because the prostitute used condoms. Well, it wasn't simply because of that, was it? No. There was evidence that the hotel or motel at which the underlying charge comes from was one near an interstate freeway frequented by interstate travelers. And there was evidence that – it may not be great evidence, but I just want to make sure I know all of it. No, I – And that there was banking done with interstate banks. Right. Well, let's start with that. The fact that cash was paid and put into a bank hardly makes a local matter Federal, because every time we use currency, we're using an item that has traveled in interstate commerce, because the currency is printed in Texas and in Washington, D.C. So we have a Federal government where we have different jurisdictions, we have overlapping jurisdictions sometimes, but there's Federal jurisdiction of matters of national importance, and then there's local jurisdiction. And there needs to be a line between them so that Federal jurisdiction doesn't become available by inventive use. Let me ask you, why doesn't Raich just foreclosure out-and-out right attack? I'm sorry? Raich. Raich, our – Raich versus the government. Oh, I'm sorry. Okay. Because it's not that kind of a case. Raich – But it's the principle that Raich stands for. Yes, but it's in an entirely different context, and not just because it's marijuana, because leaving aside the social, societal implications of marijuana – Medical marijuana. I understand that. Grown entirely in this great State. Right. Grown entirely in this great State. And used entirely by the locals. I understand that. But the difference is, is that Raich is simply a case that comes from Wickard v. Filburn. Wickard v. Filburn, it's a commodity. And a local production of a commodity can affect national market of that commodity either by producing it, withholding it, using it locally. This is not a commodity. Well, Congress said in the – was it the Trafficking – the Trafficking Act? Right. That it was trying to address a problem that extends nationwide. Right. But a series of local – This is just one part of that overall problem. Right. But federal jurisdiction can't be asserted where it's a series of local problems that happen nationally. Right. It can. What about Walls? What about U.S. v. Walls? Are you familiar with that case?  Walls. W-A-L-L-S. Not off the top, Your Honor. Well, it's the case – it's very similar to this one, and it seems like we have foreclosed your client's ability to challenge under this argument, because we – there we affirmed the conviction of a local pimp whose activities, like this one, were entirely local. I mean, it seems like it's on all fours. I'm at a disadvantage, Your Honor. The government didn't cite it. I didn't find it in my research. Is it a relatively new case? Yes. Well, that's February of 2015. It's been around for a while. Okay. Well, they missed it. I missed it. What was the basis in that case? It's similar. It's the conviction of a local pimp whose activities were similar like this, and we held that TVPA may regulate any individual instance of conduct with a de minimis effect on interstate commerce. So – But what was the connection to the interstate commerce there? Was it condoms or was it health concourse? The same thing, that there was not enough, you know, local – and I think there was a hotel that was used similar to this one that was right off the interstate that seemed to be sufficient, if I recall correctly, but – Well, Your Honor, you know, I apologize for, obviously, deficient research. I didn't see that case, and the government didn't present it. Otherwise, I'd be – Well, deal with the 11th Circuit case, then, with Evans.  You just think it's wrong. Yeah. But we would be creating a circuit split if we followed your argument. It's happened before. I know, but give us – give me a good reason why we should. Because Evans didn't really analyze the situation. They were just – and there was also, as I recall, there were other factors in addition to the condoms and the use of the hotel that they viewed warranted Federal jurisdiction. But it has no – for instance, to use condoms as a means of asserting jurisdiction, I mean, there are 450 million condoms sold every year. Apparently, none made in California. I know that. I was surprised to learn. Well, I hadn't really investigated the subject until I had this case. And apparently, Trojans have 70 percent of the market, and they're made in Virginia. It should be made by the University of Southern California. Well, be that as it may, I realize the symbolism there. But in any event, to make use of condoms a point of Federal jurisdiction means that if you use Trojan condoms in Virginia, they're going to state commerce. Now, I don't think Congress meant to favor Virginia over other States because they happen to manufacture condoms locally. Well, if you use it as a sole basis, perhaps. But there does seem to be a finding by Congress here that there's an interstate trade in young women. Correct. And that even local transactions affect that interstate trade. Why isn't that an appropriate commerce clause? First of all, I would disagree to the extent that you read the introduction to the Act, and they're talking about people who import women, often underage women, from other countries into the United States or transport them from one State to another. There is not one mention in the Act or the intent of Congress to regulate local acts of prostitution. Nor is this a situation where a small act can be part of interstate commerce because it's aggregated. Aggregation occurs in commodities. It doesn't occur in prostitution because prostitution is almost by its nature a solitary instance unrelated to other acts of prostitution that are going on in other communities or in other States. There's no evidence that a telephone was used. There's no evidence that the defendant brought the prostitute from one State to another. There's none of the things that the Act was after. And what will happen if we fasten on the incidental use of things manufactured outside the State, we lose the basis for distinguishing between State jurisdiction and Federal jurisdiction. Well, like, you know, like I said earlier, Raich just seems to foreclose that argument. Well, it does in a commodity case. But wasn't this young woman treated as a commodity? That's not really, because there's no futures in the prostitution market, but there are futures in the beef market, in the oil market. In the marijuana market? Well, it's not officially done that way, but there are established prices. And true, someone dumps a whole bunch of marijuana on the market and the price is going to go down. Whereas if someone hires a bunch of prostitutes, the national market is not going to be affected. It's a solitary, it's individual enterprise, if one is going to put a label on it, as opposed to a commodity. So as I understand your argument on the Commerce Clause, it's a two-pronged art attack, just a direct out attack, a facial attack. And then assuming that the only, that it withstands that, you'd have the government, they would have to show at least a de minimis impact on interstate commerce. Well, I think it's a two-pronged art attack.   So you're saying that you don't have to show the facts, but you don't have to show the facts. You don't have to show the facts of what you've been talking about here regarding the condoms, the hotel, the banking, next to the highway, the freeway. The way I would distinguish it between Raich and this case is like in McCoy, where you had a woman take a picture with a camera that was purchased, that came from out of State. And there it's incidental to the alleged crime. Everything we use, the clothes you wear, the shoes you wear, the toothpaste, everything just about can be traced to interstate commerce. So if using something that was made in interstate commerce is sufficient to establish Federal jurisdiction over the crime, then there is no boundary between local jurisdiction and Federal jurisdiction. All right. Let me ask you just one of your other. Sure. About one of your other arguments, the witness tampering convictions and the jury instruction that was used for witness tampering. The jury instruction. Okay. You challenged. So in the instruction, the Court added the little clause about the defendant does not need to know that his acts are unlawful. Okay. And the argument was, well, that takes away the knowing mens rea element. What was the heart of your, what were you trying to convey? Well, the mens rea argument is that in Alanis, the recent Supreme Court case, the Court held that recklessness cannot be the standard for a criminal conviction, that there has to be some knowing involved. And here you had a 13-year-old, which we would assume people can tell a 13-year-old, but this is a 5'8", 200-pound woman who is walking the host role, the place where prostitutes congregate, by herself at night. Does Alanis really stand for the proposition that there must be mens rea in a criminal conviction or only under that statute?  Well, in general. And this one is not a strict liability statute. Right. But can't we have strict liability statutes? Can't we have a statute that says if you engage in a sex with a woman under the age of 16, it's statutory rape, even if you had no reason to believe she was under 16? I believe there are such statutes. So why, I mean, why not here? What the statute says is either having reason to know that she's under an age or having the opportunity to observe her for some period of time. Right. Why is either of those unconstitutional? Because having the ability to observe her for a period of time doesn't necessarily lead to a reasonable conclusion that you can tell her age. And so it's insufficient. Well, you know, the jury verdicts, the form of the jury verdict here was interesting because it gave the – it asked the jury specifically to find whether or not he knew or whether he had a reasonable opportunity to observe. And they checked the box indicating both. Well, so you have to construe that, that he knew she was under the age of 13. Well, the problem with putting too much weight on the jury findings in this case is that my client was evicted from the courtroom before closing arguments. He was not part of the instructional conference. Whether or not he provoked that or was responsible for that is another issue. But the fact that there was only one side presented to the jury undermines reliability. Whether or not that was unavoidable is another story. But the necessary effect of there being one argument undermines the reliability of the factual findings in the case. Let me ask you about the witness tampering. With respect to Kelley, the evidence is fairly thin about witness tampering, although I think pretty sufficient about obstruction of justice. Address Kelley for me. It may not make any difference to your client since the sentences were concurrent, but you asked us to review it. Yeah, and I'm trying to remember which one Kelley was. I'm sorry. I apologize, Your Honor. I really focused on the commerce question. And you cover it in your briefing. And I'll leave it. I'd like to leave a few minutes. Okay. You can have some time. Okay, thank you. Thank you, counsel. Good morning. If it may please the Court, my name is Michael Fry, and I represent the United States. When Maurice Hunt prostituted a 13-year-old girl, he engaged in precisely the type of conduct that the TVAPA was enacted to address. And this is true despite the fact that the nature of his conduct was local. Congress's ability to use the Commerce Clause to reach purely local activities was made very clear in the Reich case, as the Court has pointed out. So let's assume in this case that there was, that the condoms were made in California and the banking was done in California and the hotel was not anywhere near an interstate. I'm thinking of Ollie's Restaurant, Katzenbach v. McClung. After what the Roberts Court has done with the Commerce Clause, would that still be enough to? Your Honor, I've actually, I've thought about that. I do. I'm not sure I know the answer. If you want my ideas, I can give them to you. But I will say that at least in terms of this Court, as it's shown in the Wallace case, all that is required is a de minimis impact on the Court. I would look at cases like Filbert and cases like the Reich case, where really it seems as though the Court's looking at the impact on society as a whole. It's not looking at the impact on commerce. They're not asking whether the marijuana, for instance in Reich, crossed property lines. Or in Filbert, whether, I think there it was very clear that the wheat was being used on the farm. I mean, so it seems to me that in some contexts the Court could say, we're looking at the over, we're looking at what Congress intended to target. Could you help me out on the witness tampering? Yes. And I didn't, I mean, and I'm not worried about the instructions for the moment. I'm just worried about the sufficiency of the evidence with respect to Kelly. What's there to suggest that this defendant was tampering with her testimony? I understand why he was trying to tell her not to show up. But tell me what, I think you'd need more for witness tampering, don't you? Okay. And I, you know, I would like to on that matter address something that Mr. Morris, thank you, raised in his brief. And this is on page 14. And he addressed whether one particular part of the transcript, whether the conversation was actually between Mr. Hunt and N.K. or Ms. Kelly. And it was a little bit difficult at the time of trial because we're using these transcripts. There was actually the recording at the time. But I think as you go back and look at the transcripts and then you look at the actual testimony, there was a part, and I, and I will. Yeah, and I couldn't find anything in the testimony that tied it up. Tell me where you think it ties it up. Well, what I first need to let you know, on page 14 of my, my brief, there's this statement that is attributed to Hunt that he's made this, he's had this conversation with N.K. And that's, that's not correct, is it? That's not correct. And I think what it was is she takes up, she picks up the phone later. She's later involved in that conversation. Okay, so take the, take that taped conversation out for a second. Okay. What, what evidence is there of witness tampering with respect to Kelly? Well, I think part, partly you have to look at the background and you look at, at their, their relationship. And first of all, it's one that, that had been premised on violence. So she knew him to be a violent person. Somebody who she knew, she knew would be violent, somebody who would use violence against her. To him, there's this phone call where he says, this is not the phone call that was in the court, but while she's testifying. But there's one that the jury heard, so. Yes, but, and I would, it's at SCR 97, this is actually the courtroom transcript. And she says, basically, he said I snitched on him. And then she understood in her line of work, prostitution, she knew that snitches lay in ditches. So there is a separate phone call that was not one of the ones that was brought into court where she. Wait, no, wait. I want to make sure that this is one that was before the jury, no? Yes. This was, this was her testimony before the jury. She testified about, she testified, you didn't bring in an actual recording of the call, but this was a testimony about the call. Yes. There were other calls that were brought in. This particular one that she testified about was not there. And give me the testimony again that you think supports a wit, as opposed to an obstruction of justice charge, as opposed to don't show up, as opposed to when you show up, I don't want you to tell the truth. Because that seems to be roughly the division between obstruction of justice and witness tampering. Well, and it would be, he said, basically, she said, basically, he said I snitched on him, and those are bad parts in quotes. And then, and her line of work, she understood that to mean snitches lay in ditches. Yeah, and so let me, again, this may not make any practical difference to this defendant, but if I say to somebody, don't show up at this trial and snitch on me, is that witness tampering or obstruction of justice? Well, I believe that would, it would be obstruction. Sure. I'm fine, because I'm trying to keep somebody from preventing testimony. What is there to suggest that I'm trying to intimidate them to give false testimony? Or? Well, I think it's tampering. One of the elements is that they did so to need to influence, delay, or prevent the testimony. I think the issue would be trying to keep her out of court, doesn't want her to be in court. So what's the difference between obstruction and tampering, then? I think it's very, very close. What did you argue to the jury? I wasn't not actually the one that argued. Does the record reflect the argument to the jury? It was a pretty generalized argument to the jury. And I specifically don't recall what it was. So if I had to. Your brief, for one, you just say, look at the other on that tampering and the obstruction. Right. Seems like it's the same thing. I view it as the same thing. Well, then what? But they're separate crimes with separate penalties. One's more serious than the other, isn't it? Terms, I cannot speak to that, actually. But what facts would you point to, then, that specifically would support a conviction for witness tampering? Okay. Well, there was the phone call that was, he made a phone call, Exhibit 7A-6, his phone call, and there was some debate about what was really said there. But what did he say about Kelly? We're talking about Kelly now. Right. And this is him reaching out to somebody else to intimidate. Sure. What did he say? What did he say? Okay. Call NK, and I think he probably used her name, and put pressure on they ask. Keep it 100% in the hood. And then there was testimony that keeping it in the hood meant not to cooperate with law enforcement. Now, there was a discrepancy between what the transcript said and how the testimony came out in that. But in essence, it was that put pressure on her, basically asking this one witness to put pressure on Natalie Kelly. Not to attend the trial or not to cooperate with the cops? Well, that would, yes, it would be to not cooperate with law enforcement. But I mean, in that, from their perspective, it's going to be courts, it's going to be law enforcement, it's going to be prosecutors, it's going to be police. It's to not be involved in the legal system. Was the jury told that law enforcement encompasses the matter in court? No. It was not. See, I think what I'm struggling with, and I think you can see it in my colleague's questions, is if I tell somebody, the cops are investigating me, clam up, don't talk to them, that sounds like obstruction of justice. If I get charged and I haven't said anything more in the meantime, does that carry over to the court proceedings? Well, to step back and just answer part of your question, there was one other comment she made. There was one other comment that was on one of the transcripts of the phone call, SCR-221, and he says they, and I think the word FBI was implied there, can't prove this case without you. So he's talking to her, talking to her directly, said they can't prove the case without you, implied in that is don't come to court. Given and when you look at his relationship with her. Was he already, refresh my recollection, had he already been charged at that point? Yes, he was in jail at that point. Okay. This was a jail call. Okay. I guess, well, you're right. He said they can't prove this case. I guess that meant that a case had been filed. Yes. The conduct here, there was a pretty good gap in time from the time of the conduct until he actually, until the case was filed and he was in court. Yes, and I knew he was in jail. I didn't know if the case had been filed yet. I don't know if it was in that gap period or. So was the argument here that this was intimidation or was it threatens or was it corruptly persuaded? I'm not precisely certain how it was argued. I think it would be. What's your, what's your argument? Whether it would be. Intimidation? I think it would definitely be intimidation. What if she said, and she didn't, that's cool, I never want to be a snitch, you didn't have to tell me that, that intimidation? We're still looking at his attempt. Right. But I'm saying, does it depend on, does it depend on the subjective reaction of the listener? No. It doesn't. So if Ms. Kelly was. Are you asking about the obstruction? I'm sorry, I didn't mean to interrupt. I'm talking about the tampering. Tampering. Tampering. I'm talking about tampering. So if the, if the listener says, don't worry, don't worry, Mr. Pimp, I would never turn on you. You don't have to tell me that. Is that obstruction, is that tampering? Well, within the tampering, it's, I think, the attempt is what's important. You're looking at his mindset. What's he intending to do? Whether he attempted to do so and did so intending to influence, delay. Right. So her reaction doesn't matter. Correct. So if you call an accomplice and say, remember, we all agreed not to snitch, then you've engaged in witness tampering, because the accomplice says, I remember, and I'm the kind of guy who would never snitch. Still witness tampering? Yes. I'm not sure if the attempt requires some furtherance beyond that. What does corruptly persuade mean? In the statute, it says, whoever knowingly uses intimidation, threatens or corrupts or corruptly persuades another person. I don't have the statute in front of me. I think it is defined there. And I think there was, the jury was actually given, I believe, a definition of what. Well, they were given a definition of corruptly in the obstruction of justice charge. Okay. But not in the witness tampering charge. I did not come prepared to answer that question. I'm sorry. No objection to the obstruction on that ground, sir. Yes. We're trying. Assuming that, does it mean the same thing as in the obstruction of justice charge? I would assume so, but I do not know. So do you just routinely charge? When you charge obstruction, you charge tampering, and when you charge tampering, you charge obstruction? There's no difference? You know, I'm not having, not being the one that filed this, I can't really. Well, but you're here arguing this, so. Yes, I am. Okay. You know, I know that there are differences between the two. What are they? What is it? Certainly the closing argument didn't suggest there were differences. The government said, you've heard all this evidence, and it establishes both obstruction and tampering, or roughly words to that effect. Well, with respect to obstruction, I mean, there has to be a pending proceeding. I mean, that was something that was brought up in some of the. Can you speak into the microphone? Yes, that there needs to be actually a pending proceeding for obstruction. That's the main one I would note. So is tampering a subset of that, then? No, I don't think it's. Is it a lesser included? I don't believe so. What's the difference? Okay. Well, as I mentioned. Tampering seems like there would have to be a proceeding as well, no? Well, it does require a witness, but I think it could possibly be in the context of where you might imagine that a case might be filed. I really cannot speak to that, and I don't want to overstep my bounds there. All right. Are there any other questions? Not really. Thank you. I find this section of my brief dealing with Ms. Kelly. I think the critical testimony as to her in terms of obstruction of justice and or tampering is she was asked, did Mr. Hunt ever suggest to you that you not make it to court? He answered, he just asked me was I going to come. How did he ask you? He just asked me whether I was going to show up. Now, how does that become obstruction of justice or tampering? It's a question. Are you going to testify? I ask that of witnesses all the time. Am I obstructing justice? What about the conversation that the government refers to? Yeah. And the government's transcript that introduced this conversation doesn't say what the government alleged. It says, you know what I mean? Call NANA. Put pressure on that ass. Tell LaBiche to keep indiscernible, keep it hot. I have no idea what that means. The government also mentioned the statement that he also told Kelly that they can't prove this case without you. That's a statement of fact. I mean, it may well be. If she's a complainant, they can't prove it out. That doesn't mean don't come to court. But we have to look at the evidence in the light most favorable to the government, don't we? Absolutely. So, I mean, I know that's an argument that you could make. You can't infer that don't come to court from the government can't prove its case without you. Because if the government said we need you, we can't prove our case without you, would that be intimidating the witness? But it's not the government saying we can't prove the case without you. But it's neutral in its import. Well, it's not neutral in its import if she has information that would prove the government's case. I mean, the negative pregnant there is you're a bad witness as far as I'm concerned. The government can't prove its case without you. Well, look, Judge, the fact of the matter is the reason they put these charges in the case is to suggest consciousness of guilt, not because this makes any difference in the overall result in the case, because only a guilty person would intimidate a witness. Can we go back to Walz for a second? Sure. And I know you – but I guess the question I'd ask you to address, and you might want to address it post-argument if you can, since the government just cites it now and wasn't in its brief, is it seems directly on point with respect to the constitutionality of the act. There is a Craigslist advertisement there. Well, that's different. I know, but the Court says it doesn't matter how much interstate commerce is involved. Well, you know – It's very much like the Eleventh Circuit case. You may not like the analysis, but it's one of ours. If I would have the Court's permission to submit a letter brief on it, again, I didn't, you know – Well, we'll issue – if we want one, we'll issue a post-hearing order directing supplemental briefs. Okay. Fair enough. Thank you very much, Your Honor. If we think it's necessary. Well, from the tenor – all right. Thank you. Thank you. Thank you, counsel. The matter is submitted at this time.
judges: Paez, Murguia, Hurwitz